IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Misle Properties, LLC,<br><br>                Plaintiff,<br><br>vs.<br><br>LBUBS 2004-C2 Cranberry Retail GP, LLC, trading as LBUBS 2004-C2 Cranberry Retail Limited Partnership, et al.,<br><br>                Defendants. | 4:18-CV-3121<br><br>MEMORANDUM AND ORDER |

This case is before the Court on the defendants' motion to dismiss or, in the alternative, to change venue. Filing 25. The Court will deny their motion.

I. BACKGROUND

The plaintiff, Misle Properties, is a Nebraska LLC that bought a property interest in a Pennsylvania shopping center and assumed liability for a promissory note that had been used to finance the seller's purchase of the property. Filing 17 at 1-3. Defendant "LBUBS 2004-C2 Cranberry Retail GP, LLC" apparently held the promissory note. Filing 17 at 1, 3-4. Defendant LNR Partners is a Florida LLC engaged in property and investment management that, according to the plaintiff, acted as a "special servicer" for the Pennsylvania property and has "through the creation of various shell corporations and/or alter egos, assigned and/or transferred the rights of the parties . . . in such a manner as to be the real party in interest on behalf of all the Defendants in this dispute." Filing 17 at 1-2, 4.

The plaintiff's allegations regarding the sequence of events and financial transactions that led to this case are somewhat hard to follow—but, perhaps

that's the point. At some point, the plaintiff allegedly defaulted on the note and other obligations under the original debt agreements associated with the property. Filing 17 at 4. The plaintiff disputed the default, but continued to receive monthly statements on the debt and continued to make the monthly payments. Filing 17 at 4. LNR Partners made its first appearance at that point, and sent the plaintiff a statement assessing past-due default interest that the plaintiff disputed. Filing 17 at 4.

The plaintiff then defaulted on its next monthly payment, allegedly in an effort to invoke "work-out provisions" of the debt agreements. Filing 17 at 4-5. LNR Partners refused to cooperate, and according to the plaintiff, LNR Partners' refusal to provide the plaintiff with information about the balance of the debt frustrated the plaintiff's ability to seek refinancing. Filing 17 at 5.

LNR Partners, either for itself or on behalf of LBUBS, sued to foreclose on the property. Filing 17 at 5. In response, the plaintiff filed a Chapter 11 petition in the Bankruptcy Court for the District of Nebraska. Filing 17 at 5. The plaintiff kept making monthly payments to LNR Partners pursuant to a protection order. Filing 17 at 5. But according to the plaintiff, LNR Partners didn't credit those payments to the plaintiff's debt. Filing 17 at 5-6. Instead, the plaintiff alleges that LNR Partners "held those funds in a suspense account without interest, while the underlying debt continued to accumulate interest, late fees and penalties." Filing 17 at 6.

The plaintiff's bankruptcy proceeding was dismissed, and the plaintiff kept making monthly payments, but LBUBS again pursued foreclosure in Pennsylvania. Filing 17 at 6. The parties tried to mediate the debt and settle the dispute, but failed. Filing 17 at 6. The plaintiff alleges that LNR Partners, for itself or on LBUBS' behalf, "unreasonably delayed the resolution of the litigation." Filing 17 at 6. Under the debt agreements, the plaintiff was obligated to pay the legal fees of LBUBS or LNR Partners in matters relating

to enforcement of the agreements—meaning that, according to the plaintiff, their dilatory litigation tactics were unreasonably running up the plaintiff's tab. *See* filing 17 at 6.

The plaintiff managed to secure refinancing, and demanded that LNR Partners account for additional charges it had allegedly tacked on to the plaintiff's debt. Filing 17 at 7. LNR Partners refused. Filing 17 at 7. So on June 8, 2016, the plaintiff, allegedly under "protest and duress," paid the amount demanded by LNR Partners for pay-off of the note. Filing 17 at 7. Then, on June 12, 2018, the plaintiff filed this action in state court seeking, in essence, to recover the disputed amounts of its debt. Filing 1-2. The defendants removed the action to this Court. Filing 1.

## II. DISCUSSION

The plaintiff's operative pleading asserts seven claims, some of which present multiple theories of recovery:

1) Breach of contract and assumpsit for recovery of payments the plaintiff made that allegedly weren't credited to its debt. Filing 17 at 7-8.
2) Breach of contract and assumpsit for alleged overpayment of the principal amount of the original debt. Filing 17 at 9.
3) Breach of contract and assumpsit for improperly charged late fees. Filing 17 at 9-10.
4) Breach of contract and assumpsit for improperly charged legal fees. Filing 17 at 11.
5) Breach of the implied covenant of good faith and fair dealing in refusing to negotiate in good faith to restructure the debt or cure the default. Filing 17 at 12.
6) Unjust enrichment as to all alleged overpayments. Filing 17 at

12-13.

7) Accounting for how payments were allocated to the debt. Filing 17 at 13.

The defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Filing 25. In the alternative, they seek a change of venue to the Western District of Pennsylvania. Filing 25.

1. MOTION TO DISMISS

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common

sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly,* 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

(a) Voluntary Payment Doctrine

The defendants' primary argument is that most of the plaintiff's claims are barred by the voluntary payment doctrine. Under Pennsylvania law,[1] "one who has voluntarily paid money with full knowledge, or means of knowledge of all the facts, without any fraud having been practiced upon him cannot recover it back by reason of the payment having been made under a mistake or error as to the applicable rules of law." *Liss & Marion, P.C. v. Recordex Acquisition Corp.,* 983 A.2d 652, 661 (Pa. 2009); *see Bordoni v. Chase Home Fin. LLC,* 374 F. Supp. 3d 378, 387-88 (E.D. Pa. 2019); *Dobson Park Mgmt. v. Prop. Mgmt.,* 203 A.3d 1134, 1140 (Pa. Commw. Ct. 2019). According to the defendants, the plaintiff voluntarily paid off the debt in 2016, so it cannot recover any alleged overpayment. Filing 26 at 8-13.

But the voluntary payment doctrine does not apply when the plaintiff chose to pay without full knowledge of the facts, or because of the other party's fraud, or under some type of duress. *Bordoni,* 374 F. Supp. 3d at 388. That's because the decision to pay in the first two circumstances would not be fully informed, and a payment made under duress would not be voluntary. *Id.*[2]

---

[1] The parties agree that Pennsylvania law applies. Filing 26 at 6-8; filing 35 at 11.

[2] A claim that the payment was merely made under protest, however, would be on more dubious footing. *See Dobson,* 203 A.3d at 1140.

- 5 -

The plaintiff has pled facts here that suggest both ignorance of the facts and the possibility of duress. In fact, a lack of full knowledge of the facts is the essence of the plaintiff's claim: the plaintiff claims that the defendants misrepresented the true amount of its debt in a number of ways, resulting in a breach of contract. Because the plaintiff did not pay off its debt under a mistake *of law*, but rather under a purported mistake of fact occasioned by the defendants' alleged misrepresentations, the voluntary payment defense does not apply. *See Liss & Marion*, 983 A.2d at 662.

Furthermore, in Pennsylvania, economic duress or business compulsion may exist where there is a pressure of circumstances which compels the injured party to involuntarily or against its will execute an agreement which results in economic loss. *Nat'l Auto Brokers Corp. v. Aleeda Dev. Corp.*, 364 A.2d 470, 474 (Pa. Super. Ct. 1976); *see Universal Atl. Sys. v. Honeywell Int'l*, 388 F. Supp. 3d 417, 432 (E.D. Pa. 2019); *Hopkins v. New Day Fin.*, 643 F. Supp. 2d 704, 715 (E.D. Pa. 2009).[3] The plaintiff claims to have been under such pressure, and the Court takes that allegation as true for purposes of a motion to dismiss. It is true that for duress to be found, the injured party must not have had an immediate legal remedy. *Nat'l Auto Brokers*, 364 A.2d at 474. The defendants argue that the plaintiff had such a remedy in 2016: resist the

---

[3] The Court has observed some uncertainty in Pennsylvania law regarding the appropriate standard for economic duress, at least in the context of invalidating a contract. *See Degenhardt v. Dillon Co.*, 669 A.2d 946, 952 (Pa. 1996). And the Court recognizes that its task in a diversity case is to predict how the state's highest court would rule, relying on intermediate appellate court decisions only to the extent that they are the most persuasive evidence of state law. *See GEICO Cas. Co. v. Isaacson*, 932 F.3d 721, 726 (8th Cir. 2019); *Northport Health Servs. of Arkansas, LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019). But the Court will rely on Pennsylvania's intermediate appellate court for present purposes, to avoid finally determining a difficult question of state law on speculative facts.

foreclosure. But it is far from clear that all of the arguments the plaintiff now asserts about overcharging and overpayment would have been cognizable in a Pennsylvania foreclosure proceeding, given that neither the debt nor the plaintiff's default were disputed.

The voluntary payment doctrine is not properly considered at the motion to dismiss stage when the factual record is insufficient to determine its viability. *Bordoni*, 374 F. Supp. 3d at 388. The Court finds the factual record insufficient here, given the plaintiff's allegations, and will not dismiss its claims based on the voluntary payment doctrine at this stage of the proceeding.

(b) Failure to State a Claim for Breach of Contract

The defendants also offer up several other claimed deficiencies in the plaintiff's breach of contract claims. For starters, LNR Partners contends that the plaintiff has not alleged the existence of a contract between the plaintiff and LNR Partners. Filing 26 at 13. But the plaintiff's operative complaint does suggest that LNR Partners might have, through reassignment of rights, made itself the real party in interest. Filing 17 at 2. Read generally, the plaintiff's complaint alleges that it overpaid *someone* on its debt, but it hasn't been able to peel enough layers off the onion to determine who actually held the debt or ended up with the money. *See generally* filing 17. So, it's pled a number of contingent claims—and, under the Federal Rules of Civil Procedure, a plaintiff may plead inconsistent facts in support of alternative theories of recovery. *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 536 (8th Cir. 1970); *Aurora Co-op. Elevator Co. v. Aventine Renewable Energy Holdings, Inc.*, No. 4:12-CV-3200, 2014 WL 6684804, at *8 (D. Neb. Nov. 25, 2014); *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 948 (D. Minn. 2009); *see* Fed. R. Civ. P. 8(d)(2) & (3); *see also Solo v. United Parcel Serv.*, 819 F.3d 788, 796 (6th Cir. 2016); *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 597 (7th Cir. 2012).

The defendants also argue that the plaintiff's first claim for relief fails because the plaintiff failed to identify a specific contractual provision that was violated. Filing 26 at 14. The Court has little difficulty dispensing with this argument: surely, in the loan agreements, there's a provision that can be read to require the party receiving payment to actually credit those payments to the underlying debt. *See* filing 27-3 at 29 § 10.2. The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). The plaintiff's first claim for relief suffices to do so.

(c) Failure to State a Claim in Assumpsit

Assumpsit for money had and received is a claim by which the plaintiff seeks to recover money paid to the defendant by mistake or under compulsion, or where the consideration was insufficient. *White v. Conestoga Title Ins. Co.*, 53 A.3d 720, 723 n.5 (Pa. 2012); *Springfield Twp. v. Mellon PSFS Bank*, 889 A.2d 1184, 1186 n.2 (Pa. 2005); *see Hindmarch v. Hoffman*, 18 A. 14 (Pa. 1889). The plaintiff alleges money had and received as a contingent theory of recovery to many of its breach of contract claims.

The defendants argue that the plaintiff's allegations are insufficient because "nowhere in the Amended Complaint are there supporting allegations that LNR [Partners] has not given valuable consideration for the money it allegedly received from Plaintiff." Filing 26 at 14. Except, of course, that the consideration for a loan agreement is the money loaned, in exchange for the promise to pay it back, and the consideration for a payment on the debt is credit against the debt. If a payment is made on a debt and the payment isn't properly credited, either because the money was diverted or the debt wasn't legitimately

owed in the first place, then consideration for the payment is lacking.

And in any event, a claim for money had and received also lies when the money was paid by mistake or under compulsion, *see id.*, and the plaintiff alleges both of those conditions as well. The plaintiff has stated claims for money had and received.

(d) Failure to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Next, the defendants take aim at the plaintiff's claim for breach of the implied covenant of good faith and fair dealing. Filing 26 at 15. In essence, they argue that the plaintiff's claim is deficient because it's not grounded in a specific contractual provision, and that it's subsumed in the plaintiff's breach of contract claims. *See* filing 26 at 15.

> The covenant of good faith and fair dealing, sometimes called the duty of good faith and fair dealing, finds its origins in American common law and was codified by the American Law Institute as § 205 of the Restatement (Second) of Contracts. Under Pennsylvania law, the covenant attaches to existing contractual obligations; it does not add new contractual duties. The covenant in essence infuses the parties' performance of their express contractual obligations. Although a complete list of what qualifies as bad faith conduct is impossible, it includes evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

*Cessna v. REA Energy Coop., Inc.*, 258 F. Supp. 3d 566, 583 (W.D. Pa. 2017) (citations and quotations omitted), *reconsideration denied,* No. 3:16-CV-42, 2018 WL 816844 (W.D. Pa. Feb. 9, 2018), *aff'd,* 753 F. App'x 124 (3d Cir. 2018). It is "a legal concept shrouded in mystery and confusion in Pennsylvania." *Id.* at 584 (quoting *JHE, Inc. v. Se. Pa. Transp. Auth.*, No. 1790 Nov. Term. 2001, 2002 WL 1018941, at *5 (Pa. Com. Pl. May 17, 2002)) (collecting cases). Much of the authority conflates the questions of whether a covenant applies to a contract with whether it supports a claim for relief. *Id.* at 585.

But the Court need not confront that problem here, because the plaintiff's good faith and fair dealing claim is based on different allegations than its other breach of contract claims: the plaintiff alleges that the defendants breached the covenant of good faith and fair dealing by refusing to negotiate in good faith to restructure the plaintiff's debt and cure its default. Filing 17 at 12. The defendants complain that the plaintiff does not identify any express contractual provision requiring such negotiation. Filing 26 at 16. But it seems like a Catch-22 for the defendants to insist that a claim for breach of an *implied* covenant must be based in a breach of an *express* covenant at the same time that they insist that the claim for breach of the implied covenant must be dismissed *because* it's the same as a claim for breach of an express covenant. *See* filing 26 at 15-16.

And in any event, the plaintiff need not plead breach of an express covenant—rather, the plaintiff need only plead that it was denied the benefit of an express covenant by such things as "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *See Cessna,* 258 F. Supp. 3d at 583. While the Court agrees with the defendants insofar as the plaintiff's claim is only tenuously connected to the terms of any contract, the plaintiff's allegations

with respect to the default do implicate the defendants' alleged misconduct in performing their obligations as lender.

In addition, it's worth noting that the plaintiff also relies on provisions in documents *not* before the Court. The plaintiff alleges that "pursuant to the terms of the Original Debt Agreements, and the operating agreements of the [LB-UBS 2004-C2 Commercial Mortgage Trust], LNR [Partners], for itself or on behalf of [LBUBS], had a duty to restructure the debt, and to treat [the plaintiff] similarly to other holders of debt, within the Trust." Filing 17 at 12. The Court has no idea whether that's true—but while the plaintiff attached certain documents to the complaint, filing 17-1, and the defendant submitted another, filing 27-3, it doesn't appear that the Court has the Trust documents, and it's not clear it has all the "Original Debt Agreements" either (because it's not clear how many there were). So, the Court is obliged at this point to accept the plaintiff's allegations about the terms of those agreements.

In sum, while there's considerable uncertainty about what the evidence will reveal to support a claim for the implied covenant of good faith and fair dealing, the *pleadings* suffice to state a claim for relief.[4]

(e) Failure to State a Claim for Unjust Enrichment

The defendants' first charge against the plaintiff's unjust enrichment claim is that it's barred by the voluntary payment doctrine. Filing 26 at 16. As already explained, the Court finds no merit to that argument. But the defendants also argue that the plaintiff's unjust enrichment claim is barred

---

[4] The defendants also argue that there's no legal basis for the plaintiff's prayer for attorney's fees and accounting fees as damages for this claim. Filing 26 at 16. But the Court need not parse out the proper measure of damages for each claim at this point: the question posed by a motion under Rule 12(b)(6) is whether the complaint states a claim for relief at all, not the scope of relief that might be available.

because the plaintiff alleges the existence of a written contract. Filing 26 at 17.

It is true that under Pennsylvania law, the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between parties is founded on a written agreement or express contract. *Bordoni*, 374 F. Supp. 3d at 388.[5] But the defendants' argument here fails, in no small part because the defendants *deny* the existence of a written contract, at least as to LNR Partners. *See* filing 26 at 13. The plaintiff alleges that it doesn't know who held the other side of the contracts it was party to, and that it doesn't know where its money went. That means it may have a breach of contract claim against the party with whom it was in privity, and an unjust enrichment claim if its money ended up with someone else. And as explained above, the plaintiff is permitted to plead claims contingently. *See Bordoni*, 374 F. Supp. 3d at 388; Rule 8(d)(3).

(f) Failure to State a Claim for Accounting

Finally, the defendants argue that the plaintiff's claim for an accounting should be dismissed because under Pennsylvania law, "an accounting is a *remedy* that a court can award only after a party prevails on some other, underlying cause of action." Filing 26 at 18. Perhaps so. *See Bordoni*, 374 F. Supp. 3d at 387; *see also Kirschner v. W. Co.*, 300 F.2d 133, 135 (3d Cir. 1962). But the Court has found that the plaintiff sufficiently pled claims for relief that, if proved, might warrant an accounting. *See Bordoni*, 374 F. Supp. 3d at 387; *see also Buczek v. First Nat. Bank of Mifflintown*, 531 A.2d 1122, 1123 (Pa. Super. Ct. 1987). So, the defendants' motion to dismiss actually asks the Court to do nothing more than take a blue pencil to the heading, "Seventh Claim,"

---

[5] To state an unjust enrichment claim, a plaintiff must allege: (1) benefits conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value. *Id*.

above the plaintiff's prayer for an accounting. *See* filing 17 at 13. The Court declines to engage in such a formality.

2. CHANGE OF VENUE

The defendants also ask that, if the case is not dismissed, it be transferred to the Western District of Pennsylvania. Filing 26 at 19. For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). The Eighth Circuit has explained that, in general, federal courts give considerable deference to a plaintiff's choice of forum; therefore, the party seeking a transfer under § 1404(a) typically bears the burden of proving that a transfer is warranted. *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010). And a transfer motion requires the court to consider the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors when comparing alternative venues. *Terra Int'l v. Miss. Chem. Corp.*, 119 F.3d 688 (8th Cir. 1997).

Here, even assuming that the action might have been brought in the Western District of Pennsylvania, the defendants haven't carried their burden. The defendants suggest that "because this case involves a Pennsylvania property, many of the relevant witnesses would reside in Pennsylvania." But the defendants haven't named a single one, or presented *any* evidence supporting their argument. And it's fairly evident from the nature of the claims that this document-driven case is largely unrelated to the physical location of the Kimberly Plaza Shopping Center. *See* filing 34-1.

It's also evident, as the plaintiff points out, that this case involves a course of dealing between the plaintiff and a number of parties, *none* of whom are Pennsylvania citizens. *See* filing 33 at 2-3. And one side of that course of dealing was engaged in by a Nebraska LLC, whose witnesses and evidence are

located here. *See* filing 34-1. The only evidence the Court has regarding the convenience of the parties and the witnesses favors Nebraska, given that none of the parties are from Pennsylvania and the only witnesses to have actually been identified are in Nebraska. That's more than enough to warrant deference to the plaintiff's choice of forum. *See BASF Corp. v. Symington*, 50 F.3d 555, 557 (8th Cir. 1995).

### III. CONCLUSION

Accordingly, the defendants' motion to dismiss or, in the alternative, for change of venue, will be denied in its entirety.

IT IS ORDERED:

1. The defendants' motion to dismiss or for change of venue (filing 25) is denied.

2. This case is referred to the Magistrate Judge for case progression.

Dated this 30th day of September, 2019.

BY THE COURT:

John M. Gerrard
Chief United States District Judge